LESTER J. RINDGE ET AL. v. CHARLES P. GROW ET AL.

*Fraudulent conveyances—Judgment creditors' bill.*

The defendants are held to have failed wholly to relieve the record from the inferences of fraud that are unavoidable from a mere recitation of the facts, for which reference is had to the opinion.

Appeal from Oakland. (Moore, J.) Argued February 15, 1894. Decided March 27, 1894.

Judgment creditors' bill. Complainants appeal. Decree reversed, and one entered here for complainants. The facts are stated in the opinion.

*Rood & Ryan,* for complainants.

*Edward J. Bissell,* for defendants.

McGRATH, C. J. This is a judgment creditors' bill. Abel P. Grow, the judgment debtor, Charles P. Grow, his son, and Joanna Grow, the wife of Charles P., are parties defendant.

In 1880, Charles P. Grow and one Barrett formed a copartnership as dealers in boots and shoes at Milford. In 1882 the business was closed out upon mortgages given to A. P. Grow and Barrett's father. A prior mortgage was given to McGraw & Co., of Detroit, which was paid at that time. The business was then conducted for about two years as Grow & Son, and thereafter in the name of A. P. Grow. In August, 1881, Barrett & Grow contracted for the lot on which the store in which the business was done stood, for $550, and bought the building also. The first payment of $50 on the lot was made by Barrett & Grow. The last payment was made August 31, 1885, by note of A. P. and C. P. Grow. The deed was recorded in August, 1886, and ran to Joanna Grow. The payments for both building and lot were made out of the business. The building and lot are valued at $1,000. The particular indebtedness upon which this suit is based is an account, the first item of which is dated in 1888.

It is evident from this record that the business, from 1882 down to the time that the deed for this property was made, as well as afterwards, was conducted upon a

small capital; and, although the record is not sufficiently full to warrant setting aside that conveyance, the only fair inference from it is that the Grows were indebted largely at the time that such conveyance to Joanna was made.

In May, 1891, Abel P. Grow executed four mortgages upon his stock,—one to Charles P. Grow for $1,237, one to McGraw & Co. for $466, one to Behn & Young for $180, and one to Dewey, Rogers & Co. for $300. The indebtedness to the last-named firm was upon a note dated January 20, 1888, and was for $615, although the mortgage was for but $300. These mortgagees were all parties from whom goods had been purchased. Abel P. Grow then gave a bill of sale of the stock and accounts to Charles P. Grow, who obtained assignments to himself of the last three mortgages, discharged the first-named mortgage, and then gave a bill of sale to his wife, Joanna, of the stock and accounts. The alleged consideration for the mortgage of $1,237 was $650, claimed to have been received by Charles P. from his mother in 1882, when Barrett retired, and with which it is claimed that the mortgage given by Barrett & Grow to McGraw & Co. was paid; and "other amounts, advanced from time to time." The mortgages to Behn & Young and to Dewey, Rogers & Co. were not solicited, but appear to have been filed without the knowledge of the mortgagees. Within a few days after the execution of these mortgages, Charles P. compromised with McGraw & Co. by payment of $250, and took an assignment to himself of their mortgage. On May 19, 1891, Charles P. wrote to Dewey, Rogers & Co. as follows:

"I am trying to settle the indebtedness of A. P. Grow, Milford, Michigan. He will not be able to pay more than 25 or 30 cents on the dollar. He has given one mortgage on the stock for $1,237, and another for $466. Please let me know by return mail your lowest cash settlement; also the amount that you will take for your

claim, one-third payable in 30 days, one-third in 60 days, and one-third in 90 days. I will say that the stock is all that A. P. Grow has, and the mortgages given will be as much as could be got out of the same at a forced sale. If I could settle with you for about $150, and the balance as they talk, I would make an effort to do so."

Charles P. afterwards settled with Dewey, Rogers & Co. for $200, taking an assignment to himself of their mortgage, and also of the account not covered by the mortgage. Behn & Young's account was settled by the payment of $60, and the mortgage was assigned to Charles P. At the time of these transactions, complainants were creditors to the extent of $1,350, and the stock on hand inventoried between $2,000 and $2,300, and there were book accounts amounting to $700. It is conceded that Joanna Grow gave no consideration for the transfer to her, except that it is claimed that she advanced $400, raised by her through a mortgage of the store property, and which was used in compromising the aforesaid accounts.

Complainants allege that for years they had been dealing with the Grows; that all their conversations and correspondence were with Charles P.; that from time to time during these years Charles P. had represented that the store and the lot upon which it stood were assets of the business, and had made representations respecting the stock on hand, and the amount of the indebtedness, which were untrue in fact; that, although in these conversations Charles P. had named over the creditors, and claimed to include all the creditors, yet the alleged indebtedness to himself had not been alluded to. It is conceded that, from 1882 to the time of these transfers, the business had been conducted and managed by Charles P. Grow, and that his father had little, if anything, to say as to its management. The son married in 1883, since which time both families had derived their support principally from the business. It does not appear that any accounts were

kept with either father or son. No dates are given when the alleged advances were made by Charles P., and no particular amounts are stated.

The defendants have wholly failed to relieve this record from the inferences of fraud that are unavoidable from a mere recitation of the facts. The major part of the alleged consideration of the mortgage from father to son is a claim nine years old, for money alleged to have been paid to relieve the business from an existing mortgage; yet for two years after that time he was a partner in that very business, and for seven years after he claims to have retired, as a partner, from the business, he managed the business, making representations respecting its liabilities, and enumerating its creditors, but not referring to the indebtedness to himself. The testimony, it is true, is conflicting respecting these representations, but the undisputed facts aid us materially in the disposition of matters which are disputed. It does not appear, nor is it intimated, that Joanna Grow ever contributed a dollar to this business, yet she is in possession of its entire assets, having a face value of $3,700 and over, subject to an alleged mortgage of $400, executed upon the store and lot, with which to compromise with certain creditors and get possession of the assets of this business. The bill of sale to her recites a consideration of $1,650, and transfers not only the entire stock to her, but also the accounts, and in her answer she sets up ownership in herself of the business.

The decree of the court below will be reversed, and a decree entered here for complainants. A receiver will be appointed to take charge of the said stock of goods and accounts. The claims of the creditors of A. P. Grow shall have precedence over any claims made by either Charles P. Grow or Joanna Grow. The latter will be required to account for said stock of goods and accounts,

and complainants will be entitled to the costs of both courts.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, J., did not sit.